Yes, Your Honor. May it please the Court, my name is James Todd Bennett, and I'm here to represent the petitioners Felipe Lopez, Maria Venegas Guerra, and Celia Lopez and Mayra Lopez. I'd like to reserve five minutes of my time, and I notice the timer is not moving. At any rate... It's about to work. There you are. Thank you. This is, as the Court is aware, this is a removal proceeding on a final order issued by the Board of Immigration Appeals. And the matter involves procedural and evidentiary issues arising from, first, the denial of a motion to suppress evidence, and secondly, the entry of the order of removal by the immigration judge. Essentially, the evidence in question here goes to the evidence offered and admitted by the Department of Homeland Security in accordance to its burden of proof, and that would be the I-391, which was offered in court, which is the only evidence they offered in court and was admitted into the record. And secondly, that evidence that was admitted by the immigration judge, sua sponte, mid-hearing, which you referred to... Well, not only admitted, but unearthed by the immigration judge. That is correct. Now, I'd like to briefly place it in the context of what we have in front of us now procedurally with the immigration proceedings. We have a devolution, if you will, or evolution, rather, of the separation of the quasi-judicial functions, and we have the prosecutorial functions, rather, of the Department of Homeland Security. And in this case, at least as far as the judge's introduction of evidence, she crosses the line. And that's at issue here is the question of aliens. That goes not only to the identity of the aliens as to the motion to suppress evidence, but also to the issue of whether they're deportable. First issue would be simply whether the government met its burden of proof, and that, secondly, did the judge properly introduce the evidence? Did she enter that evidence, find that evidence contrary to the statutes and regulations controlling her functions? Do you mind if I go back early on just in terms of the narrative? Do we have any idea why the immigration authorities targeted this family? This seems like a very odd thing to do, given the circumstance of this family. Is there something that doesn't meet the eye about, you know, these were suspected of being felons? Did they get the wrong house? Do we know what happened here and why it happened this way? On this record, no, Your Honor. There was a subvert case, the Solis case, which was subsequently heard in immigration proceedings before the very same immigration judge, who found an egregious Fourth Amendment violation on the same facts. Yes, I'm aware of that, yes. And that was upheld by the Board of Immigration Appeals. In the course of that proceeding, that evidence is not in front of the court, so I don't know whether I can rightfully refer to it. There were documents indicating that they were going to search this house, and that's about all we know. Okay. But this seems like overkill. Based on what we can tell here, this seems like a perfectly law-abiding family, if we put the immigration problems off to one side. I mean, I see no evidence that they've suspected them of some other crime or anything else, but, okay, I'll leave that alone. What do we know, if anything, about the information provided to the officers at the time of the search that would reveal the identity, characteristics, birth dates, and so on, of the four Petitioners in this case? Once the Petitioners were detained, after there's an entry into the house and they're detained and taken to San Francisco, they're all interviewed. And they do provide information for, which is included in the I-213. They do make statements. But before they were detained, presumably there must have been some reason to detain them, i.e., somebody must have had some reason to think that this person was so-and-so who was an alien. No? I mean, I would hate to think that they were just going and just taking some house and taking everybody in and had no idea who they were. No. There is evidence in the other case, not in this case, of that they, the ICE officers determined that there were aliens that were unlawfully present in the house and may have been subject to previous immigration proceedings. Now, that's the basis of our question. I mean, this is all relevant to the question of whether there was anything obtained as a result of the search that was suppressible that mattered. I mean, even aside from our ‑‑ I understand we have this problem about identity information, but assuming that somehow that precedent went away, what identity information, if anything, did they get as a result of the search they didn't have when they went into the search to begin with? I would really have to go back to the proceedings in the other case in order to answer that question fully, Your Honor. So essentially, nothing has really come out here that we know. Is there any ‑‑ even in the other cases, is there some reason to think that they didn't have enough information when they went in there as to who was in there, that that would have gone forward? Well, here's what happened. Basically, they came to this house. They had ‑‑ there was one document that indicated that they were coming to ‑‑ that they were going to come to the house and search the house. Directed, if I remember correctly, it was directed to one alien, not one that was in either proceeding, actually. He was actually deported on the same day. And then they just detained everybody there, not knowing who they are? I don't know. Is that the record? I can't get into the heads of the ICE officers. But is that the record? And there's no indication that they identified them before they arrested them? In the I-213s, there are statements. But the only reason they obtained those I-213s and get confirmation of the identity of the aliens is by their detention. All right. So now we're back to the actual proceedings. And the ‑‑ there's ‑‑ first of all, I understand there's some dispute about whether she judicially noticed these documents or entered them in evidence. Does it matter? And why should we care about that? And which is so? Exactly. It was a statute that controls the introduction of evidence. And that gives aliens certain rights to inspect the evidence. And then, secondly, there's another series of statutes. These all arise under 8 U.S.C. 1229A, which sets out the judge's duties and powers. Now, this is an administrative law judge. This is not an Article III judge. This is a judge that's circumscribed by statute. Nothing in the statutes or the regulations enacted by the Respondent would allow this judge to go ahead and start willy‑nilly introducing whatever evidence she wants to introduce into the record. Now, there ‑‑ so on that basis, and the right of the alien to inspect the evidence when it's being introduced, there's two violations. There's a violation of the judge exceeding her authority, and then there's the violation of how she introduces without a right to inspect. But the second problem seems to have serious harmlessness issues, because the judge has never indicated that there's anything you could have said that would have made any difference with regard to the substance of the information. It's the introduction of the evidence, Your Honor, that is the error. I mean, she ‑‑ I understand that. But on the notice question, if it's otherwise okay, I mean, it is acknowledged that there seems to have been a notice problem. The BIA, I think, acknowledged it, and it seems plainly to be the case. But the question is, what was the prejudice from it? Well, there are a number of issues on the I‑589. Number one, the capacity of at least two of the Respondents to even subscribe to the I‑589, which was the document that the judge introduced. Two of them were minors at the time. Secondly, the question of whether the third Respondent, Maria, who was an adult, she didn't subscribe to it. So there's nothing in there subscribing, saying that, yes, I am an alien, and I am, you know, therefore this evidence allows you to deport me. So the problem of inspection and whether they can raise objections is completely run over in this hearing. She introduces it. She says, take it up on appeal, more or less. She doesn't say that exactly, but she basically says, let somebody else decide it. I am through with this case. That's ‑‑ the second thing I'd like to address briefly is the canard of whether this is administrative notice. That issue was never raised, never invoked by the judge at any point in the stage ‑‑ excuse me, any stage of the proceeding. Same with the Board of Immigration Appeals. They simply reference, well, it's, she should have given them an opportunity to expect the evidence before she admits it. Well, that's in compliance with the statute, which is for introduction of evidence, has nothing to do with administrative notice. Thirdly, the government never invokes administrative notice throughout the proceeding. The first time we ever hear a word that this is an administrative notice problem is in this review proceeding. Up to that point, everybody is assuming evidence. The evidence was ‑‑ But if it were administrative notice, she couldn't ‑‑ she couldn't rely on it for the truth of ‑‑ Exactly. ‑‑ anything in it. So my question is, what, did she rely on it as an admission? Is that what she relied on it as? She's relying on it to prove alienage. Well, prove it because the people acknowledged that there were aliens in those documents, is that why? Or because somebody decided there were aliens? That's what she's offering it for. Well, I just asked you two different things, and you said both. You said, is it that, was she relying on the fact that these individuals, by applying for asylum, acknowledged that there were aliens? So it's sort of an admission. And that probably wouldn't come within the rule against relying on truth. Or was she relying on it that because they were eventually removed, they ‑‑ somebody had decided there were aliens? Or both? Frankly, she doesn't say. And I can't make her represent either way because I don't know what she was relying on. Would it make a difference? I mean, I gather that you would contest the first on the record that that really isn't what happened. They didn't actually, or at least some of them, you would say, didn't actually acknowledge this. That's correct, Your Honor. I would ‑‑ she indicates that she's simply introducing it to prove alienage, more or less. That's pretty much the reason why she says she's going to enter this, these I-589s on the record. And then she stamps them and makes them part of the record. But she doesn't really clarify. Now, I notice my time is down to three minutes, and I do want to reserve some rebuttal. Would you like to save it and respond to the government? Okay. I will reserve and then respond. May it please the Court. Matthew George for the Attorney General. Petitioners have never alleged that they are United States citizens. They do not challenge the accuracy or reliability of their prior immigration court records or allege that the records do not pertain to them. The burden is on the government, no? Yes, it is, Your Honor. Okay. The government didn't meet its burden, right? The government as such did not meet its burden. It didn't introduce evidence that was sufficient. It did, Your Honor. It introduced removal or notices of voluntary departure of the forms I-392. Do you think we could decide this case just on the basis of those documents and not worry about the documents that the IJA turned up? That could be one option, Your Honor, yes. But we couldn't do that, right, because that isn't what the BIA did. The board looked broader because there were more documents in the record. Right. So we couldn't affirm the board on that or deny the petition on that basis. I would say I think you could. I think what the board was considering the entire record, and those documents are in the record. Now, granted, there's a broader universe of documents in the record because the immigration judge introduced the prior immigration court records. So there's more than just those documents. However, those documents alone are sufficient evidence of alienage. That would meet the substantial evidence test for showing alienage in this case. There's no compelling evidence that those documents by themselves compel a conclusion that these individuals are not aliens. However, we have more than that in this case. We have a whole set of records from the prior immigration case. There's an asylum application that shows all of the individuals are aliens. There's birth certificates for each alien. There's a prior removal order from 2000. There's an appeal to the board. And there's even evidence, including on this Court's own docket, of a prior petition for review. Sort of extending Petitioner's argument beyond what they're arguing today, I think they'd be saying that the Court's own linking of their prior petition to review, which the Court has done on the docket for this case, would be improper. You know, let me go back to where I began with your adversary a moment ago, and that is I'm trying to figure out as best I can what information was revealed by these Petitioners, either at the time of the House search or as a result of that, and whether or not that information can be used to then unearth these documents. I gather from the proceeding that was severed that this was held in that proceeding to be an egregious violation of the Fourth Amendment, which would then require suppression.  Our case law at the moment is fairly ungenerous toward the aliens, saying that information related to identity is not suppressible. I'm not sure that's good law anymore. The Second Circuit disagrees with us fairly strongly as a result of Maryland v. King. These cases were decided after briefing in this case. So I'm trying to figure out if there's something about this case and something about Maryland v. King and what the other circuits have made of Maryland v. King that would warrant either supplemental briefing here or remanding to the BIA, or perhaps even going en banc to reconsider our own precedent. Could you give me some reaction to that? Yes, Your Honor. I actually argued one of the Second Circuit cases that you just referred to. The distinction is the evidence that comes out of the allegedly unlawful search or seizure itself. So, for example, in this Court's jurisprudence in Orhagahi, I'm not sure how to say that exactly. It's a 1994 case that came up in this case. The evidence that came out of as a result of the unlawful search or seizure in that case was an I-94, was a passport, and was some admissions from the alien himself. And those were documents or evidence that did not exist in the government's possession prior to that unlawful search. Well, what was the evidence that came out of this? That's what I can't figure out. In this case, Your Honor? Yes. Nothing came out of the alleged unlawful search. Other than the other case, something was suppressed. What was suppressed? That I don't know. I'm not sure, Your Honor. I haven't looked at the... How do you know nothing came out in this case? Because nothing was introduced in this case that's subject to suppression. Well, maybe, maybe not. Just as a hypothetical. Let's say that in the course of the search, they unearth a PG&E bill that has a name on it, and they then use that name as part of the interview saying, you are da-da-da-da-da. Read this right here. Is that true, and when were you born? Once they get that information, they then go and find the documents that we're now talking about. Now, I don't know that. And I guess you don't know that either. What we do know is that after having seized these people, after what I'll say, I'll call it a presumptively egregious search because it was so found in the other case, but I use the word presumptively carefully. After engaging in this search, they somehow moved from that to finding these documents pertaining to these people. So somehow they needed information that would allow them to look for these documents and connect them to these people. So they had to have gotten something. And what they got was identity. And identity is something that the Supreme Court has said over and over cannot be suppressed. But the question is, what does that mean? That's the real problem because we've now extended it to things like the Supreme Court had in mind, to me at least. But if all they ‑‑ so if what they're complaining about here, and that's what I'm trying to figure out, is just that because of the illegal search, they found these people and physically arrested them and were able to bring them to an immigration hearing and detain them, that is what they were talking about in the Supreme Court case. But if they found something or some additional information or maybe, and I don't know this, if they asked them, what's your name, and they told them their name, and that's what they're relying on, an admission as to what their name is, that's a different story than, you know, this person exists and we're arresting him. And we can't tell which it is here. That's what we're trying to find out. Well, one issue we have in this case is we simply don't know. And it would be, I think, a little presumptuous for the court to read behind the record or assume something we just don't know. And that's also something the Petitioners have never argued. Right. So I guess for present purposes, we have to assume that they found something or other, because something or other was thought to be suppressed, and something or other was suppressed in the other case. Something or other. We don't know what. At minimum, even the Second Circuit said that name is encompassed within identity. So regardless of the... Well, I'm not sure that's what the Second Circuit said. What the Second Circuit said, as a practical matter, the name will be known. I don't think the Second Circuit said that if the name is obtained as a result of the illegal search, that that is not suppressible. I don't believe the Second Circuit is saying that. Actually, what happened in the other case was the testimony was that after he arrested the person they were after, they asked everyone for identification, which was provided. And then they used that to get immigration history over the telephone. That's what it says. Well, even if, let's say, the Petitioners were entirely silent, they refused to answer questions. They said nothing. And the ICE agent simply brought them to immigration court and said... Well, that we understand. But the question is that's apparently not what happened, it appears, even though it's not in this record, i.e. I can't answer that, Your Honor. What they got was identification documents. Those identification documents, if they obtained them, which it's not clear to me from the record that they did, they weren't introduced in this proceeding. And so how can that be suppressed? Well, it wasn't because you refused to hear the suppression hearing. But we're just trying to figure out whether there is this is the kind of case that would merit raises the issues that the Second Circuit, for example, identified. And we can't quite figure that out. Let's go on to the rest of the case. What is the case? All right. Well, the rest of the case is to the extent that the immigration judge considered documents outside of the I-392s, that is well within the... The extent. She obviously didn't think they were good enough, and she went out and found her own. I mean, we have no reason to think she would have ruled the same thing without them. Is that true? Perhaps. Now, the procedural posture of this case, though, is more that the Petitioners made these documents or sort of brought them within the purview of the immigration court by first filing a motion to transfer their case to the immigration judge because it handled their other case and said, look, we have this prior removal order that this other judge entered. Here's our names. Here's our A numbers where it relates to that. Please transfer our case back to that individual or that judge. Then they filed their suppression motion after their transfer motion was denied. The immigration judge said, look, those proceedings are done. There's no reason to transfer those back to that immigration judge. Then in the suppression briefing, the government, in response to the suppression motion, again referred to their asylum application, referred to their prior removal order, referred to the board appeal, referred to their petition for review. Now, considering those two things together, both Petitioners' reference to it and the government's reference to it in response to the suppression motion, what was the immigration judge supposed to do? Should she just ignore those references, or should she, well, within her statutory rigors? Kagan. She could have asked the government to bring in the rest of the record. Ideally, yes, Your Honor. That's probably what she should have done or what the government should have done on its own. However, the statutory and regulations provide her with plenty of discretion to go beyond what the parties have provided, and in some cases that's necessary to look at things outside what the parties have provided. And so that's what she did here, was pull up immigration court records. Do you think it makes any difference whether this was evidence or administrative notice? No, I don't think so, Your Honor. Exactly what we're going to call it, whether it's administrative notice, whether it's some sort of judicial notice, whatever the reference is, it's all under either the statute or the regulations that provide the immigration judge with discretion to do. In terms of the question I asked before, was she relying on this as an admission or was she relying on it as proof that they had previously been found to be aliens? I think from looking at precisely what the immigration judge said, she relied mostly on the asylum application. And so it may have been more the information on the asylum. On the representation that they were aliens and therefore applying for asylum. I think that's right, Your Honor. The board seems to have gone a little broader in looking at records more as a whole. The focus did seem to be on the asylum application relatively heavily. Does it make any difference if some of these people were minors? I mean, in other words, if you're looking at them as admissions, I suppose it might matter whether the people were capable of admitting. I don't see how it would make a difference whether it was made in, say, an asylum application or in the prior proceedings by counsel, which is in the administrative record for this case, is the prior transcript of their prior hearing where their attorney admits the allegations in their prior notice to appear that they are aliens. I'm trying to figure out, and you, I suspect, are not going to be able to provide any more help than Mr. Bennett, maybe even less. But I'm trying to figure out why this happened the way it did. As best I can infer, but it's only an inference, that the immigration officials were not after these people. They were after somebody else who might have been in that house. But these people, had they not been in the company of some, I'll call him bad guy, they never would have been subjected to this raid, and they would probably be living comfortably, silently, below the radar in San Leandro at this moment. That's possible, Your Honor. Unfortunately, I don't have any more information than you do. Has the government considered or has there even been a request to mediate this one? I mean, this one, this is not your ordinary removal proceeding, and it's got lots of problems with it. Has the government considered mediation? Years ago, we did engage in mediation, and this year, before this case was set for argument, I again took this case to DHS, and they again declined to exercise any sort of prosecutorial discretion or anything like that. Okay. I've got another question, and that goes back to the number of things that we don't know about this case that might now be relevant in light of Maryland v. King, and if we were to agree with the Second Circuit or some version of that circuit, going back on what I think is now our case law, would it make some sense to remand this case now for development of the record so we can at least understand what we're dealing with? No. Petitioners have never challenged the suppression issue. Well, they haven't because the case law, Maryland v. King and later cases, is all post-briefing. They did have a suppression motion in front of the BIA, but they were basing it on different Ninth Circuit law. So I don't think waiver is an appropriate response. You might have some other response as to why we shouldn't do it. Well, my additional response would be that the type of information that the government used here was simply identity, and identity has... Well, then you see, but what do you mean by identity? And the short answer is, neither you nor I know exactly what they got and what they learned as a result of this, I'll call it presumptively, egregious search. But the bottom line is, what did the government introduce? The government didn't introduce anything. Well, no, the question is, how did the government learn to find that information and then introduce it? Because if the information that they used to find it was itself suppressible, we've got a fruit-of-the-poisonous-tree problem. The only indication in this record is that it came from identity, as the Supreme Court has said, going back to... But when you say identity, what do you mean by identity? Because if identity means fingerprints, I'm afraid Ninth Circuit law may say that's okay. I'm not sure that's good law after Maryland v. King, and that certainly would not be good law in the Second Circuit. Identity means what the Supreme Court said in Kerr and Frisbee and López Mendoza. It's not suppressible. But are you trying to make the same argument you just lost on in the Second Circuit when you go back to López Mendoza? No. In the Second Circuit, the documents that sought to be suppressed were Guatemalan birth certificates that the government obtained after the search. It was unclear what information they used to get those documents from Guatemala. The Second Circuit, in unpublished cases, has held that documents that are preexisting in government records, such as asylum applications, visa applications, things like that, are not suppressible because they preexist any alleged Fourth Amendment violation. They're not suppressible even if the only way the government was led to find them was that illegal information was the link? The linking itself is not suppressible. Yes, that's what the Second Circuit held. It's unpublished, unfortunately, but. Okay. Thank you. Any further questions from the bench? Thank you. Just briefly, Your Honors. The entire file was never, of the previous proceeding, which is in the CAR in this is an entirely new proceeding. They didn't reinstate on these petitioners. They instead decided to go ahead with a new proceeding. So that file, if it's going to be made part of the record, had to be admitted in some way, shape, or form, which it never was. Only select documents, the I-589 and one birth certificate for the lead petitioner was introduced by the judge. So the idea that the BIA could then rely on this entire record at that point doesn't really pass muster in the sense that it was never made part of the record. But can you explain something to me? In the other case, they ended up suppressing all oral and written statements taken from Respondent, all documents and other physical evidence taken from Respondent were obtained from a search of his residence, all immigration forms, et cetera. How — I don't understand why — what the IJ said or what the BIA affirmed with regard to the motion just present in this case, that would have precluded that same remedy and therefore precluded the proceeding. In other words, I don't see — I understand what happened in the removal proceeding, but I don't really understand what happened with regard to the suppression motion. Why did the presence or absence of this additional information lead to the denial of the suppression motion? The subvert case involved an alien — I know all that. Oh, I'm sorry. But I want to know, since — what I want to know is why — I mean, ultimately, if they could have suppressed what apparently happened here, which is that they talked to the — and said, who are you, and got information and got I.D. stuff at the house, then they never would have gotten to these documents. So why did the — what was the explanation for why the — and I'm not talking now about overruling our President. I'm talking about what the BIA actually ended up doing. Why did then — would the suppression motion have been suppressed, have been — have been pretermitted in this case? What does she say about that? What was the explanation? And are you appealing the — are you contesting that? I think you are. Yes. But on exactly what ground? What's the connection between the suppression motion and these later-found documents, the documents that the I.J. later found? Okay. But for the illegal entry into the house. But for that, these aliens would have never been discovered. I mean, they would have never — Well, they wouldn't have been discovered. But the question is, what's the — what were you seeking to suppress, I guess, is what I'm asking you. Anything that would have to do — that would lead the ICE officers to these particular aliens. Okay. And any files or any other information. And that would be the statements they made when they were taken into detention with the other six — excuse me, the other two aliens that were in the house, including the one that was the target. And that is what was suppressed in the other case. So I don't understand why the — these documents are pertinent to the suppression motion. Well, one of the differences, Your Honor, that might be helpful. Would be the fact that the alien in the case that was granted did not have a prior deportation proceeding. I know that. That's the only thing I can offer to you on that issue. I can't get into the — Now, in your brief, you start out simply by reciting settled Ninth Circuit law with respect to identity and so on. And so you don't really argue the case as to suppression of, broadly speaking, identity information. But you heard me speak to the government lawyer. I'm not sure that that constitutes a waiver, given some of the case law that is relevant. In fact, all of the case law that's potentially relevant with respect to our prior precedent is post-briefing. If you — if we were to ask you for supplemental briefing with respect to suppression, would you be in a position — I mean, in a sense, this argument blindsides both of you because it's not been briefed. Would you be in a position to tell us more about what it was that was sought to be suppressed in the earlier suppression motions? Or is the record simply just going to be just as blank as you people are this morning on this question? I think we probably would be — I think there would be more of a record, especially in reference to the Solis case, if we could take judicial notice of some of the contents of that file would be, I think, illicit. But there was a motion to suppress made in this case. Isn't that right? That's right. So what were you trying to suppress? Like I — as I attempted to say before, anything that would have been found as a result of the illegal — Yeah, I know you say anything. I mean, was there something found? You just entered a broad category. Let me — are there specific things you were trying to suppress? Yes. There were statements made by the alien. There were documents examined by the aliens that were detained. And that led them to the next point, which was to find all these — And depending on the nature of the statements or the documents, it might well be, if the Second Circuit's law is the law, that we may have a problem here. That is correct. Okay. And just, if I may, just before going, if the case is remanded, if the case were denied and remanded, we'd still ask — excuse me, denied on the petition, we would ask it to be remanded for the relief, because clearly there was a problem in proving deportability. Once deportability is established definitively, they're entitled to relief, and we'd ask remand. That was spelled out in the original pleadings. It's in the record. And am I right in assuming that your clients are not detained? They are not. Okay. Thank you. Thank you, Your Honor. Thank both of you for your arguments. Lopez-Gomez v. Lynch, submitted for decision.
judges: Fletcher, Berzon, Bea